[718 NYS2d 66]

Andrew S. Sardanis, Respondent, v Sumitomo Corporation et al., Appellants.

First Department, January 9, 2001

### APPEARANCES OF COUNSEL

*Ahmed A. Massoud* of counsel (*Massoud & Pashkoff, L. L. P.,* attorneys), for respondent.

*H. Christopher Boehning* of counsel (*Roberta A. Kaplan* and *Wendy R. Weiser* on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for Sumitomo Corporation, appellant.

*H. Peter Haveles, Jr.,* of counsel (*Anna K. Sils, Skye Gabel, Tom M. Fini* and *Robin L. Larmer* on the brief; *Cadwalader, Wickersham & Taft,* attorneys), for Global Minerals and Metals Corporation and others, appellants.

### OPINION OF THE COURT

WALLACH, J.

This appeal requires us to revisit (and, indeed, to revise) our position with respect to the strictures of the Hague Convention of 1965, an international treaty to which both the United States

and Japan are signatories, as it applies to the service of process herein upon a Japanese corporation. We must also consider the scope of the Penal Law pertaining to commercial bribery, and whether a private right of action is created thereunder, as well as other issues involving fraud and the damages recoverable under the pleaded allegations.

Plaintiff, former chairman of the board of directors of RST Resources, a corporate trader in commodities, alleges in this action that certain named and unnamed faithless employees formed a competitive company (defendant Global Minerals and Metals Corporation) which then conspired with a former customer, Japanese defendant Sumitomo Corporation and its American subsidiary, to drive plaintiff out of business and raise the price of copper by manipulating and controlling its trade on the world futures market. Efforts were made to take over the company by allegedly bribing RST employees to obtain sensitive and confidential data for Sumitomo, and interfering with RST's relations with customers and funding sources by spreading false information about its financial condition. Damages are sought from all defendants for commercial bribery and fraud, from the former employees for breach of fiduciary duty, and from the corporate defendants for inducement to breach fiduciary duty.

In addition to dismissing all claims against Sumitomo's American subsidiary, the IAS Court dismissed in its entirety only the cause of action for unjust enrichment. The remaining corporate defendants and three individual defendants appeal.

■ At the outset, we hold that the complaint should have been dismissed as against defendant Sumitomo. Personal jurisdiction was purportedly effected on this Japanese corporation, which has no business address or designated agent in New York, by service on the New York Secretary of State under Business Corporation Law § 307. But the service requirements of this dispute are governed by the Hague Convention.* Article 15 of the Convention requires service of process either by actual delivery or by "a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory." Paragraph (a) of article 10 permits the "send[ing of] judicial documents, by postal channels, directly to persons abroad," but that paragraph pertains to the forwarding of informational material, not the

---

* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (20 UST 361).

"service" of documents for jurisdictional purposes. Japan has clearly indicated its preference for personal service by objecting to paragraphs (b) and (c) of article 10, which would permit a form of foreign substituted "service of judicial documents."

We recognize that American courts have divided over whether article 10 (a) should be interpreted as allowing foreign service of the type permitted under Business Corporation Law § 307. Even in New York there has been a division of authority among the departments of the Appellate Division. This Court approved such service in *Philip v Monarch Knitting Mach. Corp.* (169 AD2d 603), citing our earlier dictum in *Low v Bayerische Motoren Werke* (88 AD2d 504, 505) and a Fourth Department decision in *Rissew v Yamaha Motor Co.* (129 AD2d 94; *see also, Cantara v Peeler*, 267 AD2d 997). But we are now convinced that the contrary interpretation, as expressed by the Third Department in *Reynolds v Woosup Koh* (109 AD2d 97), is the better reasoned, especially in light of the United States Supreme Court's reading of "service" in the Hague Convention as a term of art, referring specifically to the process that initiates a lawsuit and secures jurisdiction over an adversary party (*Volkswagenwerk AG. v Schlunk*, 486 US 694, 698).

Personal jurisdiction was never obtained over Sumitomo Corporation. The complaint must accordingly be dismissed as against that defendant. Our 1991 interpretation of the treaty to the contrary, in *Philip v Monarch Knitting Mach. Corp.* (*supra*), is overruled.

■ Commercial bribery of the nature alleged is a felony under New York law (Penal Law § 180.03), but the statute makes no mention whether a private right of action is created thereby. The test, in general, for determining whether such a right of action implicitly derives from a criminal statute depends upon satisfaction of all of the following factors: whether plaintiff is of a class for whose benefit the statute was enacted, whether recognition of such a right of action would promote the legislative purpose, and whether creation of such a right would be consistent with the legislative scheme (*Sheehy v Big Flats Community Day*, 73 NY2d 629).

The purpose of this statute was to protect consumers from the higher prices and lower quality that would almost inevitably result from pervasive bribery in any segment of commerce. RST is not among that class intended to be protected. It is possible that permitting such a right of action, thus enabling employers to pursue corrupt employees, might enhance the statute's purpose of weeding out such corruption; but such a

remedy already exists under tort law. More important, the creation of such a right of action under the statute would be inconsistent with the existing legislative and remedial scheme, which gives the power of enforcement to the District Attorney.

Federal courts in New York have followed this three-pronged test in a series of cases, consistently denying a private right of action under the commercial bribery provisions of the Penal Law (see, *Philip Morris, Inc. v Grinnell Lithographic Co.*, 67 F Supp 2d 126, 140). We adopt this position, notwithstanding a contrary ruling by the Fourth Department in *Niagara Mohawk Power Corp. v Freed* (265 AD2d 938).

■ The cause of action for fraud alleges defendants' intentional concealment of the fact that contract negotiations were based on Sumitomo's unlawful receipt of RST's confidential information, and RST's reliance on defendants' failure to disclose that fact. But in order to recover in damages for fraud, plaintiff must demonstrate pecuniary loss (*Lama Holding Co. v Smith Barney*, 88 NY2d 413). It appears that RST sold its copper for more than it had paid. The fact that an even greater profit might have been realized had RST not been caused to sell to Sumitomo is speculative. Without proof of an out-of-pocket loss, plaintiff cannot recover in fraud.

■ We affirm the IAS Court's refusal to dismiss the remaining causes of action. The allegations of breach and inducement to breach fiduciary duty are both governed by the six-year Statute of Limitations. CPLR 213 (7) applies to actions by or on behalf of a corporation against a present or former corporate director or officer. In urging a shorter Statute of Limitations, the Global defendants argue that these individuals were no longer officers of RST at the time of the alleged acts. The record indicates to the contrary. Each was alleged to have engaged in breaches of fiduciary duty, or acts to induce such a breach, while in the employ of RST, resulting in out-of-pocket loss, lost profits, diversion of business and lost opportunities (see, *105 E. Second St. Assocs. v Bobrow*, 175 AD2d 746). The complaint was pleaded with sufficient particularity to withstand a motion to dismiss at this stage, pending discovery.

■ We note that a claim for punitive damages in a tort action is viable where the alleged wrongdoing has been intentional and deliberate (see, *Prozeralik v Capital Cities Communications*, 82 NY2d 466, 479). Defendants' alleged plot to destroy RST, in part through the corrupting of its employees, meets that standard. Indeed, the larger scheme to corner the copper market and manipulate its prices satisfies the even

higher standard, generally applied in contract cases, of awarding punitive damages where the wrongful pattern of conduct is directed at the public in general (*see*, *Rocanova v Equitable Life Assur. Socy.*, 83 NY2d 603, 613).

■ Finally, defendants appeal the denial of their motion for a stay of this action, based upon the pendency of sanctions against plaintiff from an earlier discontinued action in the United States District Court for the Southern District of New York. We agree with the IAS Court that the mere possibility of an award of costs in the discontinued Federal action does not provide the basis for a stay of the present action, since such relief would follow only *after* costs are actually awarded (purely speculative at this point) and remain unpaid in such a collateral action (*Prudential Oil Corp. v Phillips Petroleum Co.*, 83 AD2d 453).

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered March 7, 2000, insofar as it denied defendants' motions to dismiss the first four causes of action in the complaint and denied a motion for a stay pending an application for sanctions against plaintiff in Federal court, should be modified, on the law, to the extent of granting dismissal of the first and fourth causes of action, and otherwise affirmed, without costs.

NARDELLI, J. P., ELLERIN, LERNER and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered March 7, 2000, modified, on the law, to the extent of granting defendants' motions to dismiss the first and fourth causes of action, and otherwise affirmed, without costs.